# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES STRATENBERGER and WILMA STRATENBERGER,

    Plaintiffs,

v.

    Case No. 07-CV-10884-DT

PRIME THERAPEUTICS, LLC,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendant Prime Therapeutics, LLC's motion for summary judgment, filed on October 17, 2007. The matter is fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

### I. FACTUAL BACKGROUND

Plaintiff James Stratenberger has diabetes. (Pls.' Compl at ¶ 19.) In order to treat his disease, Plaintiff's physician prescribed the insulin drug NovoLog mix 70/30 (*Id.* at ¶ 5.) Plaintiff[1] mailed the prescription to Defendant, which is a mail-order pharmacy, on or around February 7, 2005. (*Id.* at ¶ 5.) On March 4, 2005, Defendant filled the prescription and mailed a product purporting to be NovoLog mix 70/30 to Plaintiff. (*Id.*

---

[1] Unless otherwise stated, the court's use of "Plaintiff" will refer to Plaintiff James Stratenberger.

at ¶ 6.)  Plaintiff began administering the purported NovoLog mix 70/30 medication pursuant to his doctor's instructions.  (*Id.* at ¶ 7.)

During the period that Plaintiff was administering the purported NovoLog mix 70/30, Plaintiff's physician noted in May and August 2005 that Plaintiff's blood sugar levels were outside the normal range.  (*Id.* at ¶ 8.)  Additionally, Plaintiff began experiencing dizziness, nausea and weakness.  (Pls.' Notice of Intent, Def.'s Mot. Ex. D.)  On August 8, 2005, Plaintiff sought medical attention for a testicular abscess and was admitted to Henry Ford Hospital that day.  (Pls.' Compl. at ¶¶ 10.)  Plaintiff remained hospitalized until August 11, 2005.  (*Id.* at ¶ 10-11.)

Upon discharge from the hospital, Plaintiff obtained prescriptions for different types of insulin.  (*Id.*)  Plaintiff took these prescriptions to a local pharmacy, where the pharmacist discerned that Defendant had been erroneously sending Plaintiff NovoLog, instead of NovoLog mix 70/30 for the past six months.  (*Id.* at ¶¶ 11-13.)  Plaintiff maintains that his testicular abscess and subsequent deterioration of health are a direct result of Defendant's negligence in dispensing the incorrect prescription.  (Pls.' Resp. at 8.)  As a result of Defendant's alleged error, Plaintiff claims pain and suffering, medical expenses, lost wages, emotional damages and a permanent loss of balance.  (*Id.* at ¶ 20.)  Additionally, Plaintiff Wilma Stratenberger, the wife of Plaintiff James Stratenberger, alleges emotional and economic damages as a result of Defendant's actions.  (*Id.* at ¶ 22.)

Prior to Plaintiff's hospitalization, Plaintiffs filed a voluntary Chapter 13 bankruptcy petition, case no. 05-53284, in the United States District Court for the

Eastern District of Michigan on April 26, 2005. Plaintiffs' Chapter 13 Plan of Reorganization was approved on July 29, 2006. Plaintiffs petitioned the bankruptcy court to convert their case to a Chapter 7 bankruptcy on August 3, 2006, and the motion was granted on September 5, 2006. Plaintiffs' bankruptcy was discharged on December 12, 2006, and the case was closed on May 7, 2007.

During the pendency of the bankruptcy, Plaintiffs attempted to negotiate a monetary settlement with Defendant regarding their injuries. (Dep. of James Stratenberger, Def.'s Mot. at 54-58, Ex. C.) Plaintiff testified at his deposition that he spoke with an attorney employed by or retained by Defendant sometime in September 2005 with regard to "trying to negotiate some type of settlement." (*Id.* at 55.) Plaintiffs rejected Defendant's proposed settlement offer and then retained counsel. (*Id.*) On April 11, 2006, Plaintiffs' counsel sent Defendant a Notice of Intent to File Claim that outlined the factual basis of Plaintiffs' claim. (Pls.' Notice of Intent, Def.'s Mot. Ex. D.) On November 10, 2006, Plaintiffs, through counsel, sent Defendant a formal demand correspondence that outlined Plaintiffs' settlement demands. (Pls.' Formal Demand, Def.'s Mot. Ex. E.)

## II. PROCEDURAL BACKGROUND

After their bankruptcy was discharged, Plaintiffs filed the instant action on January 23, 2007. Defendant's motion for summary judgment asserts that Plaintiffs' medical malpractice claims are barred because Plaintiffs failed to disclose their personal injury claims in their earlier bankruptcy proceedings. (Def.'s Mot. at 1.) Defendant argues that Plaintiffs' nondisclosure destroys Plaintiffs' standing in the current case and

that Plaintiffs are now judicially estopped from pursuing this claim. (Def.'s Mot. at 1.) Plaintiffs respond that at the time they filed for bankruptcy, the personal injury cause of action had not yet accrued. (Pls.' Resp. at 1-2.) Therefore, Plaintiffs assert that they never made a false statement in their bankruptcy proceeding and judicial estoppel does not apply. (*Id.* at 2.)

### III. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323).

4

The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## IV. DISCUSSION

The doctrine of judicial estoppel is meant to protect the integrity of the judicial system by "preventing parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Judicial estoppel bars a

party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

Pursuant to 11 U.S.C. § 521(1), a debtor seeking bankruptcy protection is required to file a schedules of assets, liabilities, current income, current expenditures and a statement of the debtor's financial affairs. A debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well settled that causes of action are among the assets that must be disclosed on a debtor's schedules. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). When a debtor fails to expressly list a cause of action in an earlier bankruptcy proceeding, *res judicata* prevents a litigant from later raising that claim. *Browning*, 283 F.3d at 774. However, the Sixth Circuit has stated that judicial estoppel may be inappropriate where a debtor's omission is "inadvertent," such as where the debtor lacks a factual basis of the undisclosed claims or has no motive for concealment. *Id.* at 776 (citing *Browning Mfg. v. Mims (In re Coastal Plains.)*, 179 F.3d 197, 210 (5th Cir. 1999)).

For the reasons discussed more fully below, the court finds that judicial estoppel should be applied and that Plaintiffs' omission cannot be labeled "inadvertent" because (1) Plaintiff had a factual basis of the undisclosed personal injury claim prior to their Chapter 7 bankruptcy conversion and (2) Plaintiffs had a motive to conceal and took

6

affirmative steps to conceal the existence of James Stratenberger's personal injury claim.

Plaintiffs' bankruptcy was converted to a Chapter 7 petition on September 5, 2006 and it is not contested that Plaintiffs failed to list their current personal injury claim in their amended schedule of assets. Contrary to Plaintiffs' assertions, the omission of the personal injury claim was not inadvertent. First, Plaintiffs were fully aware of the factual basis of the personal injury claim at the time that their bankruptcy was converted. Second, Plaintiffs were engaged in settlement efforts during their bankruptcy proceedings regarding this claim. Plaintiff's deposition reveals that one year prior to the bankruptcy conversion (in September 2005), Plaintiffs attempted to negotiate a settlement agreement with Defendant regarding the claims at issue in this litigation. (Dep. of James Stratenberger, Def.'s Mot. at 54-58, Ex. C.) Additionally, five months before Plaintiffs' bankruptcy conversion, Plaintiffs' counsel sent Defendant a Notice of Intent to File Claim that outlined the factual basis of Plaintiffs' claim. (Pls.' Notice of Intent, Def.'s Mot. Ex. D.) Under these circumstances, it is clear that Plaintiffs had full knowledge of their personal injury action claim prior to the Chapter 7 conversion and that the omission in their bankruptcy schedules cannot be construed as stemming from a lack of a factual basis.

The fact that Plaintiffs now raise this personal injury claim amounts to a position that is contrary to one that the Plaintiffs asserted under oath in a prior proceeding. After Plaintiffs petitioned the bankruptcy court to convert their case, Plaintiffs signed an Amended Declaration Concerning Debtor's Schedules under penalty of perjury on

October 24, 2006, which failed to disclose the existence of Plaintiffs' personal injury action. (*See generally,* Pls.' Schedules, Def.'s Mot. Ex. B.) Additionally, Plaintiff testified under oath on October 12, 2006 at his First Meeting of Creditors Hearing ("341 hearing") that he was not seeking recovery for any personal injury claims. (Audio Recording of Stratenberger's 341 Hrg. at 2 min. 40 sec., Def.'s Reply, Ex. G.)

It is also improper to label Plaintiffs' omission as inadvertent because Plaintiffs had a motive to conceal. In *Tyler v. Federal Express Corp.*, 420 F. Supp. 2d. 849 (W.D. Tenn. 2005), the district court held that a motive to conceal a pending litigation claim could be inferred from the fact that omission of the claim from the bankruptcy estate would entitle the plaintiff to keep all the proceeds. *Id.* at 858. Similarly, a motive to conceal is present here, as omission of Plaintiffs' claim from their bankruptcy estate would entitle Plaintiffs to keep any future proceeds that result from this litigation.

Plaintiffs assert that, having learned of the omission from the prior bankruptcy case, they are now seeking to reopen the case to correct the omission. However, courts have not looked kindly on these kinds of belated attempts to correct past omissions. As the Eleventh Circuit noted:

> The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [a party] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

*Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002). The fact that Plaintiffs moved to reopen their bankruptcy case only after Defendant raised the issue

of judicial estoppel provides an insufficient basis from which the court could infer good faith or mistake. See also, Johnson, 345 B.R. at 824.

Plaintiffs make a number of other arguments in defense of their omission. Plaintiffs assert that because they did not have knowledge of the personal injury claim when they first filed for bankruptcy protection in April 2005, their previously submitted schedules from their Chapter 13 bankruptcy carried forward into their Chapter 7 bankruptcy on advice of counsel. (Pls.' Resp. at 9.) However, whether Plaintiffs were fully aware or not of the factual background concerning their claim at the time they first filed bankruptcy is irrelevant, because a debtor's duty of disclosure is a continuing one, and debtors are required to amend their schedules if financial circumstances change. *Tyler*, 420 F. Supp. 2d at 856; see also In re Coastal Plains, Inc., 179 F.3d at 208.

Additionally, Plaintiffs' reliance on the advice of their bankruptcy counsel does not render their admission inadvertent, because the United States Supreme Court has held that a litigant is bound by the errors and omissions of his or her attorney. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-634 (1962).[2] In the case at hand, Plaintiffs signed their amended bankruptcy schedules under penalty of perjury, certifying that they had

---

[2]In an unpublished opinion, the Sixth Circuit stated that "[p]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis v. Weyerhaeuser Co.*, No. 04-5675, 2005 U.S. App. LEXIS 13598, 15 (6th Cir. July 6, 2005.) The court then cited *Link* for the proposition that a litigant is bound by the errors of his or her attorney. *Id.* at 22.

While the court notes that *Lewis* is not recommended for full-text publication and unpublished opinions are without precedential value in the Sixth Circuit, unpublished opinions of the Sixth Circuit are persuasive authority for this court. *U.S. ex rel. A+ Homecare, Inc. v. Medshares, Mgmt. Group, Inc.*, 400 F.3d 428, 449 n.15 (6th Cir. 2005).

no claims against Defendant. In these circumstances, it is the duty of the debtor to carefully review and verify the accuracy of the information contained in his or her schedules, and Plaintiffs may not "avoid the consequences of misrepresentation by blaming [their] bankruptcy attorney." *Johnson*, 345 B.R. at 825.

Lastly, Plaintiffs argue that "Defendant herein did not rely on the absence of the claim from the bankruptcy schedule, so it can claim no prejudice." (Def.'s Resp. at 12.) However, Plaintiffs' argument misstates the standard for judicial estoppel as set forth by the Sixth Circuit. The test is not whether Defendant relied on Plaintiffs' inconsistent position; but rather, whether the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775. The failure to list a cause of action in a debtor's bankruptcy schedule qualifies as a "prior position" for purposes of judicial estoppel. *Johnson*, 345 B.R. at 822. In this case, the bankruptcy court relied on Plaintiffs' assertions in their schedules when discharging Plaintiffs' debts. As a result, the bankruptcy court relied upon a prior position taken by Plaintiffs as part of a final disposition.

For these reasons, the court finds that Plaintiffs' claims are barred by the doctrine of judicial estoppel.

## V. CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. #11] is GRANTED.

      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: November 29, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 29, 2007, by electronic and/or ordinary mail.

                                        S/Lisa Wagner
                                        Case Manager and Deputy Clerk
                                        (313) 234-5522